UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TOUCHMARK HOTEL GROUP, LLC, d/b/a
HOLIDAY INN EXPRESS,

                        Plaintiff,

                                                    24-cv-6744 (PKC)

                                            OPINION AND ORDER

        -against-

 MT. HAWLEY INSURANCE COMPANY,

                        Defendant.

------------------------------------------------------------------x

CASTEL, Senior District Judge:

        Touchmark Hotel Group, LLC d/b/a Holiday Inn Express ("Touchmark") brings

this action against Mt. Hawley Insurance Company ("Mt. Hawley") for breach of contract.

Touchmark alleges that Mt. Hawley failed to pay out insurance benefits to which it was entitled

under an insurance policy covering its hotel property.  Mt. Hawley moves for summary judgment

on the basis that Touchmark violated two provisions of the policy, relieving Mt. Hawley of its

coverage obligations under the policy.  For reasons that will be explained, the motion will be

granted.


BACKGROUND

        Mt. Hawley issued a commercial property insurance policy, No. MPC0604887, to

Touchmark for the period from December 22, 2022 to January 22, 2024 (the "Policy").  (ECF

79-1 at 1–2, 110.)  The Policy covers "[s]pecial [causes of loss] including Equipment Breakdown

[and] excluding Earthquake and Flood" for a Holiday Inn Express located at 10148 New Berlin

Road in Jacksonville, Florida (the "Property"). (Id. at 2.) The limit of insurance for building coverage under the Policy is $5 million, and the Policy provides for a $25,000 deductible per building for windstorm or hail damage. (Id. at 4–5.).

The Policy sets out reporting duties for Touchmark in the event of a loss or damage to the Property. The Policy states that Touchmark must "[g]ive [Mt. Hawley] prompt notice of the loss or damage" and "[a]s soon as possible, give [Mt. Hawley] a description of how, when and where the loss or damage occurred." (Id. at 17.) In addition, a "Windstorm or Hail Loss Reporting Limitation Addendum" to the Policy repeated the "prompt notice" requirement and the obligation to provide a description of the circumstances of the loss "as soon as possible" and added that no claim may be submitted later than one year from the loss:

> With respect to loss or damage caused by windstorm or hail, including any named storm, you must give us prompt notice of the loss or damage and include a description of the property involved, and as soon as possible give us a description of how, when and where the loss or damage occurred. In no event may a claim be filed with us later than one year after the date of the loss or damage that is the subject of the claim.

(Id. at 88.)

The Policy also contains a "Concealment, Misrepresentation or Fraud" condition, which states, among other things, that "[t]here is no coverage for any claim under this Policy if, at any time and regardless of intent" Touchmark or its representatives "provide incorrect, false, inaccurate, or incomplete information in connection with any claim under this Policy." (Id. at 100.)

Touchmark alleges that on January 4, 2023, a storm caused damage to the Property. (Compl't ¶ 8.) Rohit "Rick" Patel, Touchmark's corporate representative, testified that he was not at the Property on the day of the storm. (ECF 80-1 at 20.) However, in a telephone call on January 5, 2023, the manager of the Property reported to Patel that he observed

2

detached shingles from the roof of the Property in the Property's parking lot.  (Id. at 20–21.) Patel testified that Touchmark did not file an insurance claim at that time because Touchmark's employees did not detect any water leakage in the building and because he did not believe that the cost of the damage from the storm would exceed the Policy's deductible.  (Id. at 50–54.)

On May 23, 2023, following another storm, the Property's phone system became inoperable and employees of the Property noted water intrusion into the room housing the phone system.  (Id. at 24, 26, 73–75.)  Nearly a month later, on June 22, 2023, Touchmark submitted its first notice of loss to Mt. Hawley through its insurance agent.  (ECF 79-2 & 80-2.)

Mt. Hawley denied the claim on September 6, 2023.  (ECF 79-3.)  In its letter, Mt. Hawley explained that the engineer it retained to inspect the damage to the Property's roof determined that such damage was inconsistent with wind damage.  (Id. at 1–2, 4.)  Mt. Hawley also stated that it was not waiving its rights to assert other defenses under the Policy in the event Touchmark instituted litigation against it.  (Id. at 5.)

On March 8, 2024, counsel for Touchmark sent Mt. Hawley a pre-suit demand letter.  (ECF 79-4.)  Attached to the letter was a sworn statement in proof of loss, which claimed a loss of $805,258.91 to the Property.  (ECF 79-4 at 3.)

On April 30, 2024, Touchmark commenced this action in the United States District Court for the Middle District of Florida.  (ECF 1.)  Mt. Hawley and a co-defendant that has since been dismissed from the action moved to transfer the case to the Southern District of New York on the basis of the Policy's forum selection clause.  (ECF 10.)  Chief Judge Howard, to whom the case was assigned, granted the motion, which was unopposed by Touchmark.  (ECF 33.)  The action was then transferred to this district.

Touchmark's Second Amended Complaint ("Complaint") brings a single breach of contract claim, which alleges that Touchmark suffered a covered loss under the Policy and that Mt. Hawley refused to pay the benefits to which Touchmark is entitled under the Policy. (Compl't ¶¶ 17–20.) The Complaint seeks damages equal to the full cost of repairing the Property. (Id. ¶ 21.) Touchmark also seeks to recover court costs and attorneys' fees pursuant to several provisions of Florida state law. (Id. at 4.) Touchmark invokes subject matter jurisdiction by reason of diversity of citizenship pursuant to 28 U.S.C. § 1332(a).[1]

Mt. Hawley moves for summary judgment on Touchmark's breach of contract claim. First, Mt. Hawley argues that Touchmark violated the provisions of the Policy requiring Touchmark to give prompt notice to Mt. Hawley in the event of a loss or damage to the Property. Second, Mt. Hawley asserts that Touchmark violated the concealment, misrepresentation or fraud provision of the Policy by overstating the cost of replacing the Property's roof in its sworn proof of loss. Mt. Hawley further argues that Touchmark's claims for court costs and attorneys' fees under Florida state law are not cognizable under New York law.

SUMMARY JUDGMENT STANDARD

Under Rule 56(a), Fed. R. Civ. P., summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating there is no genuine dispute of material fact. Jeffreys v. City of New York, 426

---

[1] Before transferring the case, Chief Judge Howard ordered the parties to submit briefing on the issue of subject matter jurisdiction. The sole member of Touchmark, a limited liability company, is Rick Patel, a citizen of Georgia. (ECF 8.) Mt. Hawley is incorporated in Illinois with its principal place of business in Illinois. (Id.) Thus the parties have diverse citizenship. The satisfaction of the amount in controversy requirement is clear from the face of the Complaint.

F.3d 549, 553 (2d Cir. 2005). A fact is "material" when it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is a genuine issue of fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In reviewing a summary judgment motion, a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." Anderson, 477 U.S. at 247–48. The nonmoving parties "must do more than simply show there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys, 426 F.3d at 554 (internal citations and quotations omitted).

DISCUSSION

I.  New York Law Controls.

The Policy contains a choice of law provision, which states that "[a]ll matters arising out of or relating to this Policy shall be determined in accordance with the law and practice of the State of New York." (ECF 79-1 at 93.)[2]

_____

[2] The Court notes that Mt. Hawley substantially misquotes the choice of law provision in the Policy in both its Rule 56.1 statement (ECF 77 ¶ 3) and its brief in support of its motion for summary judgment (ECF 78 at 4). (See ECF 79-1 at 93.)

Touchmark does not respond to Mt. Hawley's argument that New York law controls by express provision but it exclusively cites to cases applying New York law in its brief. Because Touchmark has not and cannot dispute the express contractual provision, New York law will govern. Also, when, as here, "[t]he parties' briefs assume that New York law controls, . . . such implied consent . . . is sufficient to establish choice of law." Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) (quoting Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000)).

II.   Breach of the Prompt Notice Requirement.

The Policy requires that, in the event of a loss or damage, Touchmark "[g]ive [Mt. Hawley] prompt notice of the loss or damage" and "[a]s soon as possible, give [Mt. Hawley] a description of how, when and where the loss or damage occurred." (ECF 79-1 at 17; see also id. at 88.) Mt. Hawley argues that Touchmark's nearly six-month delay between when its corporate representative learned of damage to the roof on January 5, 2023 and its first notification to Mt. Hawley concerning the damage on June 22, 2023 violated this provision of the Policy, relieving Mt. Hawley of its coverage obligations. The Court agrees.

"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995). A failure on behalf of the insured to comply with a notice provision "vitiates the contract." Great Canal Realty Corp. v. Seneca Ins. Co., 5 N.Y.3d 742, 743 (2005) (quoting Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 339 (2005)). When a policy requires that notice of a loss be given as soon as possible, "such notice must be given within a reasonable time in view of all of the facts and circumstances." Hedvat v. Chubb Nat'l Ins. Co., 24-1194, 2024 WL 4615824, at *1 (2d Cir. Oct. 30, 2024)

(summary order) (internal quotations omitted) (quoting Eagles Ins. Co. v. Zuckerman, 301 A.D.2d 493, 495 (2d Dep't 2003)).  "The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim."  Sparacino, 50 F.3d at 143.

"Where an excuse or explanation is offered for delay in furnishing notice, the reasonableness of the delay and the sufficiency of the excuse are matters to be determined at trial."  Travelers Ins. Co. v. Volmar Const. Co., 300 A.D.2d 40, 42–43 (1st Dep't 2002) (quoting Hartford Accident & Indem. Co. v. CNA Ins. Companies, 99 A.D.2d 310, 313 (1st Dep't 1984)).  "However, where there is no excuse or mitigating factor, the issue poses a legal question for the court, and courts have found relatively short periods to be unreasonable as a matter of law."  Id. at 43 (quoting Hartford, 99 A.D.2d at 313).

Rick Patel, the sole member of Touchmark, a limited liability company, testified as the designated witness for Touchmark under Rule 30(b)(6), Fed. R. Civ. P., that he was not at the property during the storm on January 4, 2023.  (ECF 80-1 at 20.)  The following day, however, he received a call from the manager of the Property, who reported that he observed shingles that were detached from the roof laying on the ground around the Property.  (Id. at 20–21.)  According to Patel, the shingles had flown "all over" the Property, including in its parking lot and in an area behind the hotel.  (Id. at 20.)  As of January 5, 2023, these circumstances "would have suggested to a reasonable person the possibility of a claim" under the Policy.  Sparacino, 50 F.3d at 143.

Touchmark attempts to manufacture a factual dispute by recharacterizing Patel's testimony regarding the detached shingles.  It asserts that the damage observed by the Property's manager was a "small amount of shingles" and a "scarce number of shingles."  (ECF 81 at 4, 7.)

7

Touchmark does not cite to any other portion of the record on this motion to support its claim that the number of shingles was "small" or "scarce." Touchmark's position is inconsistent with Patel's statements that he was told by the Property manager that the shingles had flown "all over" the Property and had landed in its parking lot and in an area behind the hotel building. (ECF 80-1 at 20.). Again, the circumstances reported to Patel on January 5, 2023 would indicate a possibility of a claim under the Policy, thus triggering Touchmark's notice obligations.

Touchmark does not dispute that it first notified Mt. Hawley of the damage to the Property's roof on June 22, 2023, 168 days after Patel learned about the damage on January 5, 2023. (ECF 82 ¶ 11.) This approximately five-and-a-half-month delay was unreasonable as a matter of law. Courts applying New York law have found much shorter periods to be unreasonable. See Am. Home Assur. Co. v. Republic Ins. Co., 984 F.2d 76, 78 (2d Cir. 1993) (collecting cases that held that unexcused delays in providing notice of 10 to 53 days discharged insurer's obligations to provide coverage); Minasian v. IDS Prop. Cas. Ins. Co., 676 F. App'x 29, 31 (2d Cir. 2017) (summary order) (collecting cases that held that delays of 26 to 51 days were unreasonable); Indian Harbor Ins. Co. v. City of San Diego, 586 F. App'x 726, 729 (2d Cir. 2014) (summary order) ("Under New York law, delays of one or two months are routinely held unreasonable."). Courts in this district interpreting the same prompt notice provisions in other Mt. Hawley insurance policies have held likewise. See, e.g., Greater St. Stephen Ministries, Inc. v. Mt. Hawley Ins. Co., 24-cv-3130 (AS), 2026 WL 18879, at *2 (S.D.N.Y. Jan. 2, 2026) (Subramanian, J.) (90-day delay untimely); AMVS, Inc. v. Mt. Hawley Ins. Co., 22-cv-10782 (ER), 2025 WL 278438, at *6 (S.D.N.Y. Jan. 23, 2025) (Ramos, J.) (82-day delay untimely).

Touchmark nonetheless argues that its delay should be excused. Touchmark points to Patel's testimony that he did not report the damage observed on January 5, 2023

because he could not have known at that time that the cost of repairing the detached shingles would exceed the Policy's $25,000 deductible. (ECF 80-1 at 53–54.) Touchmark argues that uncertainty was resolved after the storm on May 23, 2023, when employees on the Property noticed water intrusion in the building. (Id. at 73–75.) Only then, Touchmark argues, did its notice obligation under the Policy kick in.

This argument misses the mark. "The standard for when an insured must notify their insurer is not when they learn of the full extent of the damages but is instead when they learn that there is any 'reasonable possibility of their policy's involvement.'" Hedvat, 2024 WL 4615824, at *2 (quoting Figueroa v. Utica Nat. Ins. Grp., 16 A.D.3d 616, 617 (2d Dep't 2005)); see also Heydt Contracting Corp. v. Am. Home Assur. Co., 146 A.D.2d 497, 499 (1st Dep't 1989) ("The fact that a particular occurrence may not in the end result in a ripened claim does not relieve the insured from advising the carrier of that event."). Patel testified that he was aware of some damage to the roof of the Property caused by the January 4, 2023 storm by January 5, 2023. That he believed that this damage did not exceed the Policy's deductible did not excuse him from promptly reporting that damage to Mt. Hawley.

Indeed, another court in this district reached the same conclusion in a similar case. See HKB Hosp. LLC v. Mt. Hawley Ins. Co., 23-cv-372 (JPO), 2024 WL 4349508 (S.D.N.Y. Sept. 30, 2024) (Oetken, J.). There, the plaintiff's hotel's roof suffered damage in a windstorm. Id. at *1. On the day of the storm, the hotel's owner observed "some broken bricks, debris[,] [and] lifted shingles." Id. at *1, 3. Plaintiff reported the damage to Mt. Hawley six months later, attributing its delay to, among other things, the fact that it "was waiting to see . . . whether there was any damage" to the hotel. Id. at *3–4. Interpreting similar notice provisions as those presented in this case, the court rejected the plaintiff's purported excuse for its delay, reasoning

9

that the "evident damages" it observed on the day of the storm suggested the possibility of a claim. Id. at *3–4. The court thus concluded the plaintiff's delay was unreasonable and granted summary judgment in favor of Mt. Hawley. Id. at 5.

Without any cognizable excuse, Touchmark's five-and-a-half-month delay in reporting the loss to Mt. Hawley was unreasonable as a matter of law and therefore a breach of the Policy's notice provisions. Mt. Hawley is thus relieved from its coverage obligations under the Policy. Summary judgment on Touchmark's breach of contract claim will be granted in favor of Mt. Hawley.

III. Breach of the Concealment, Misrepresentation or Fraud Provision.

Because the Court will grant summary judgment in favor of Mt. Hawley as to Touchmark's breach of contract claim, the Court need not consider the alternative grounds for summary judgment on that claim raised by Mt. Hawley's motion.

IV. Touchmark's Request for Court Costs and Fees Pursuant to Florida Law.

In its Complaint, Touchmark requests that it be awarded court costs, attorneys' fees, and expert fees pursuant to Fla. Stat. §§ 57.041, 92.231, 627.428, 626.9373, and 627.70152. (Compl't at 4.) Mt. Hawley argues that the requested relief is not cognizable under New York law.

The Court need not resolve this question because Touchmark entirely fails to respond to Mt. Hawley's argument in its brief opposing the motion for summary judgment. The Court therefore deems the request for relief pursuant to the Florida statutory provisions abandoned. "Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended." Jackson v. Fed. Exp., 766 F.3d 189, 196 (2d Cir.

2014).  Such an inference may be drawn when, as here, the non-movant responded to the entirety of the movant's statement of undisputed facts and the non-movant's brief argued that summary judgment should be denied as to another claim.  Id.

The Court therefore will grant summary judgment to Mt. Hawley as to Touchmark's request for court costs and fees under the Florida statutory provisions.

CONCLUSION

The Court grants summary judgment in favor of Mt. Hawley and against Touchmark on the breach of contract claim and on Touchmark's request for court costs and fees pursuant to Florida law.  The Clerk is requested to terminate the motion at ECF 76, enter judgment for the defendant, and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 24, 2026

11